# S T A T E   O F   L O U I S I A N A

## PARISH OF ORLEANS

--------------------------------------------------------

MRS. KATIE HORN          :

      versus             :

MARYLAND CASUALTY COMPANY   :

                   :     No. 7615,

                    COURT OF APPEAL

--------------------------------------------------------

--------------------------------------------------------

Claiborne J. dissents (43 An 347)

------------------

------------------------------

Max Dinkelspiel, Judge.

This suit is filed under the Workmen's Compensation Act of this state, and alleges that plaintiff is the widow of Joseph Horn, a resident of this city, who, at the time of his death, was married to petitioner and petitioner was dependent upon him for her support and the support of her minor child; that at the date of his death and prior thereto the deceased husband was in the employ of George Glover, a general contractor doing business in the City of New Orleans; that he was employed by said contractor as a piledriver at the plant of the American Can Company; that on or about the 6th day of September, 1918, in due course of his employment, and when performing services in the regular course of his employer's business, as a piledriver on a pile driver at the plant of the American Can Company, a pile-cap or steel plate used for capping piles fell from a height of about sixty feet, striking deceased, fracturing his scull, and as a result of said injury and other injuries due to said accident her said husband died three days later in the Charity Hospital of this city; that at the time of his death her husband was earning $6.00 per day, equivalent to $36.00 per week; that the Maryland Casualty Company, a corporation doing business as an insurer in this state, with offices in this city, did, by a contract of insurance entered into by and between itself and George Glover, agree to assume all liability arising out of injuries or damages resulting to any of the employees of the said George Glover, or as the result of damages arising out of and due to the death of any of said Glover's employees during the regular course of their employment, as set forth and specified in what is known as the Employers' Liability Act, being Act 20 of 1914, and amendments thereto, by which policy said insurer binds itself and agrees to pay promptly to the person or persons

entitled thereto all installments of compensation which may become due to them as provided in Act 20 of 1914 of the State of Louisiana, and amendments thereto, and the same is a direct obligation on the part of said insurer to your petitioner for the compensation due her for the injuries and loss inflicted upon her as hereinabove detailed, under said act and the amendments, and so plaintiff has a right of action against said insurer to enforce the payment to her of the comepnsation past due and such compensation as shall become due to her from week to week, as provided by the act and as fixed by Act 243 of 1916 and Act 38 of 1918; that under the circumstances said insurance company and George Glover are indebted to her under said acts aforesaid for compensation for the death of her said husband in the sum of $106.80, as weekly compensation of $5.34 due her for the twenty weeks which have expired from September 6, 1918, to January 24, 1919, with legal interest thereon from judicial demand, and in the further sum of $1498.20, payable in weekly installments of $5.34, said pyaments to be made from week to week for two hundred and eighty weeks from January 24, 1919; that under the provisions of Section 8 of Act 38 of the General Assembly of the State of Louisiana of the year 1918, under Paragraph marked B, the following provision is made: "If widow or widower and one child, then to such widow or widower and child, for their joint benefit, 40 per centum of wages." Under Paragraph marked D: "If one child alone and no widow or widower, then to such child 25 per centum of wages." That the insurance company, defendants herein, have recognized the rights of your petitioner's minor child, Estelle, and have paid 20 weeks compensation at $8.91 per week, and have agreed to pay, as the payments mature, to said minor the sum of $8.91 per week for 280 weeks. Plaintiff further represents that she is poor and without means, and unable to give costs as they accrue, or to give bond, and annexes her oath.

Finally, and in conclusion, she prays to be permitted and

authorized to prosecute this suit without the payment of costs, and that said Maryland Casualty Company be cited hereto, served with a copy of this petition within four days from filing thereof, and ordered to file its answer within seven days from service thereof. Further prays that the said Maryland Casualty Company and George Glover be duly cited hereto, served with copies of this petition within four days from the filing thereof, and ordered to file their answer thereto seven days after the service thereof, and that after all legal delays defendants be condemned in solido to pay to your petitioner the sum of $106.80 as weekly compensation past due her from the 6th day of September, 1918, to the 24th day of January, 1919, with legal interest thereon from date of judicial demand, and the further sum of $1498.20 payable in weekly installments of $5.34 from week to week from January 24, 1919, for 280 weeks, in satisfaction and as provided by Act 20 of 1914 and amendments thereto, and for all general and equitable relief.

The answer of the Maryland Sasulaty Company substantially is that they had no information sufficient to justify them to acknowledge the legal status of plaintiff, and calls for strict proof. Further answering, they deny that plaintiff was dependent upon her husband, Joseph Horn, for support. They deny, further, that they are indebted in any sum whatsoever to the plaintiff, but, on the contrary, that plaintiff well knew that under the Act 38 of 1918, amending Act 20 of 1914 and Act 243 of 1916, and particularly Section 8, Paragraph L, it is provided: "No compensation shall be payable under this schedule to a widow unless she be living with her deceased husband at the time of the injury and death, or be then actually dependent upon him for support;" and they aver further, on information and belief, that the said plaintiff had not been living with her husband for six or seven years prior to the time of injury and death, and that she had been earning her own living for four or five years antedating said

injury and death, by working at the Lane Cotton Mills and other places. They admit that they have recognized the rights of decedent's minor child and have paid compensation to said child under Act 38 of 1918, but have declined to pay compensation to the petitioner, because no compensation is due her under the facts and circumstances of this case, which will be shown on the trial hereof.

Wherefore they pray that plaintiff's suit be dismissed, at her cost.

It is satisfactorily proven, and not denied, that plaintiff was the legal wife of the deceased, and that she was earning a livelihood for self and child for quite a time, when she was compelled to place the child in an orphan asylum, but, so far as she was concerned, she worked at the Maginniss Cotton Mills, earning, from the time of separation, some six years prior to the filing of this suit, from $8.00 to $11.00 weekly, and was so engaged in working and earning compensation at the time of her husband's death.

Section E of the Workmen's Compensation Act, being Act No. 20 of 1914, provides:

> "For injury causing death within one year after the accident, there shall be paid to the legal dependents of the employee wholly dependent upon his earnings for support at the time of the injury, a weekly sum as hereinafter provided for not to exceed one-half of the average weekly wages of the employee as herein defined, but not more than $10.00 nor less than $3.00 a week, for a period of 300 weeks.
>
> "If the employee leaves legal dependents only partly dependent upon his earnings for support at the time of the injury, the weekly compensation to be paid as aforesaid shall be equal to the same proportion of the weekly payments for the benefit of persons wholly dependent as the amount contributed by the employee to such partially dependents in the year prior to his death, bears to the annual earnings of the deceased at the time of his injury.
>
> "When weekly payments have been paid to an employee before his death, compensation to dependents shall begin on the date of the last of such payments, but shall not continue for more than 300 weeks from the date of the injury."

The amendatory act, being Act 243 of the acts of the State of Louisiana of 1916, Section 12 thereof, provides:

> "No compensation shall be payable under this section to a widow unless she is living with her deceased husband at the time of his death, or was then actually dependent upon him for support."

Again, Section 1 of Act No. 38 of the Extra Session of the General Assembly of 1918, reads:

> "No compensation shall be payable under this schedule to a widow unless she be living with her deceased husband at the time of injury and death, or be then actually dependent upon him for support."

And at page 56 of the same act, paragraph 22

> "In all cases provided for in this schedule the relation of dependency must exist at the time of injury and at the time of death."

Notwithstanding the legislature of our state was cognizant of Article 120 of the Civil Code, reading:

> "The wife is bound to live with her husband and to follow him wherever he chooses to reside; the husband is obliged to receive her and to furnish her with whatever is required for the convenience of life, in proportion to his means and condition."

There have been no adjudications on this particular question in the annals of the decisions of our Supreme Court, and we are called upon for the first time to decide whether, notwithstanding the Civil Code provisions heretofore referred to, the legislature, under its power, have or have not the right to make the exception which it has made in the several acts of the legislature of 1914, 1916 and 1918 referred to.

In the matter of the Succession of Kunemann, to be found in the Lousiana Annual Reports, Volume 115, at pages 606 et seq., where the question was as to the marital fourth, the Supreme Court (p.610) says:

> "It has been held that a widow, to succeed in her claim for the marital fourth, must be in necessitous circumstances at the time of the death of her husband." (Quoting Succession of Robertson, 28 La.,832.

And in this same connection the court, at page 614, goes on to say:

"We cannot, however, overlook the fact that the source of the right to the marital fourth is derived from the law itself, and that the will of the law-maker as to the terms or conditions under which it should be exercised is to be looked for and ascertained by the courts and not the will of the spouses themselves. The courts are bound to confine the exercise of the right to the class of cases proper for the execution of the purpose which the law-maker had in view."

We have been referred by the able counsel for plaintiff in this case to numbers of authorities quoted from the courts of Massachusetts, the English courts, and other authorities equally as good and as well considered, but whether the statutes of the different states and those of England are as ours we have not examined into carefully, but from quotations in counsel's brief we note marked differences, and we are bound by the statutes of our own state and must follow them, as we do the decisions of our Supreme Court.

The question of dependency, or dependence, is defined in the Century Dictionary as follows: "Subordinate; subject to, under the control of, or needing aid from some extraneous source; as, the dependent condition of childhood; all men are largely dependent upon one another. In Law, conditioned on something else. One who depends on or looks to another for support or favor." And in Worcester's Dictionary, on the same subject, the author goes on to define the word "dependent" thus: "The state of being dependent; subordinate or subject to with or on the class of cases proper for the execution of the purposes which the law-maker had in view."

See *Roberts v. Whaley,* 158 N. W. 209, and authorities there cited.

We have carefully examined and considered the briefs, the testimony and the law, and we have come to the conclusion that the judgment of the court a quo is correct; and it is therefore affirmed.